## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | CASE NO. 7:21CV00138 |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LT. PENNY MCCOWAN, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| Defendants. | ) | United States District Judge |

Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials at Red Onion State Prison engaged in a series of cell searches and allowed flooding of his cell, resulting in damage to or loss of property and adverse mental health effects. Riddick complied with the required filing prerequisites, *see* 28 U.S.C. § 1915(b), but upon review of the pleadings, the court concludes that Riddick's case must be summarily dismissed without prejudice for failure to state a claim upon which relief could be granted.

## I.

Liberally construed, Riddick's alleges that, on September 3, 2020, while Riddick was in the shower, defendants J. Mullins, J.H. Mullens, B. Mullens, and A. Gardner ransacked his cell. They threw away ink pens, inked pictures, destroyed paperwork, and threw stuff on the floor. B. Mullens took headphones without providing him a confiscation form and returned them two weeks later. B. Mullens also allegedly called Riddick a "snitch."[1]  (Compl. 16 [ECF No. 1].)

---

[1]  Riddick asserts that these officers searched his cell to retaliate against him because he had complained to investigators that they had allowed another inmate to assault Riddick on September 2, 2020.

On September 17, 2020, while Riddick was in the shower again, B. Mullens "allowed inmate Shipley in C-526 to flood [Riddick's] cell by pouring water in the vent. [Mullens allegedly] gave [Shipley] the Okay to do this prior to putting [Riddick] in the shower." *Id.* at 1. The officers then asked Riddick how water had gotten into his vent and called Lt. P. McCowan to see the water. After Riddick finished showering, the officers placed him into his flooded cell. His "property had been taken off of the cell floor [and] put on [his] bunk prior to [him] leaving the shower by staff." *Id.* at 3. Riddick remained in the flooded cell for five hours before B. Mullens removed the water.[2] Sergeant Ridings (the officers' supervisor) "was aware" of the flooded cell but did not require quicker removal of the water.

On October 6, 2020, while Riddick was shaving in the shower, B. Mullens (with J. Mullins and J.H. Mullens) allegedly ordered him to exit, and P. McCowan arrived shortly thereafter. Riddick told them he had cut himself and needed to stay in the shower to rinse off the blood. B. Mullens suggested to the other officers that while Riddick was rinsing off, they could "shake his cell down." *Id.* at 6. Riddick claims that these four officers, in "retaliation" for his refusal to leave the shower as ordered, ransacked his cell for fifteen minutes. *Id.* The officers allegedly dumped out Riddick's five laundry bags of property items, legal documents, laundry, and mail onto the floor and bunk. Copies of 1200 exhibits for a counseled lawsuit became mixed up with other legal documents. Riddick further alleges that a complaint form about the September 3, 2020, shakedown disappeared. Officers put Riddick back into his cell

---

[2]  To remove the water, B. Mullens allegedly placed Riddick in the shower and then pushed the visibly dirty water out of the cell. Riddick claims that he heard B. Mullens and J.H. Mullens "snaking [and] flushing [Riddick's] toilet to make it appear [his] toilet was stopped [and had] flooded [his] cell. [Riddick] heard B. Mullens [and] Ridings, after [his cell was flooded, tell the inmate Smith in the cell beside [him], C-509, to say the pipe burst in the pipe chase [and] flooded his cell." (Compl. 4 [ECF No. 1].) McCowan later blamed Riddick for flooding his cell, although she allegedly knew otherwise.

"with blood all over [his] body[,] clothes[,] [and] shower floor." *Id.* at 7. Officers immediately removed the blood from the shower. No other inmate's cell was searched that day. Riddick did not reorganize his property items for four days, "because mentally, emotionally, physically [and] psychologically," he was unable to do so.

On October 20, 2020, an inmate in Cell 520 allegedly flooded Riddick's cell, while Riddick was in the shower. Officer Rose removed the water. Riddick speculates that shakedowns and flooding of his cell "would've occurred more had [he] not for weeks not went [sic] to the shower." *Id.* at 12. He states that he "sought mental health care as a result of the repeated harassment and shakedowns and flooding [and] became increasingly paranoid, anxious, depressed [and] didn't want to go to the shower, recreation or leave [his] cell out of concern that [it] would be ra[n]sacked and flooded." *Id.* He states that he suffers from "P.T.S.D., major depressive disorder [and] major anxiety disorder," for which he has been taking medications. *Id.* at 12-13.

On November 3, 2020, while Riddick was in the shower, Sergeant Flemming, Sergeant Ridings, B. Mullens, and defendants Fox and Dotson ransacked his cell. Ridings confiscated two sets of Riddick's headphones and served him with a confiscation form. Someone "threw out" Riddick's ink pens, and someone "put a towel in [his] toilet [and] flushed [it] repeatedly flooding [and] running it over with water." *Id.* at 8. Riddick's property items, legal documents, clothing, receipts, mail, pictures, letters, grievance forms, and copies of legal exhibits were spread on his floor and bunk. Those items near the toilet were soaked. Riddick claims that he "saw [and] heard Flemming look up at C 520, inmate Shipley [and] said, Ay Shipley, alright, start pouring." *Id.* at 9. Among items "taken" were four of Riddick's AA batteries and a bottle

of oil. *Id.* When Riddick was escorted from the shower back to his cell and surveyed the damage, he asked Ridings "to look at the water pouring out of [his] bottom cell vent, and [Ridings] looked at the bottom vent [and] said he didn't see any water coming from the vent." *Id.* at 9–10. When Riddick asked who would remove the water, Ridings told him to clean it up himself. Riddick left the water for four days.

After the November 3, 2020 cell search, Riddick claims that B. Mullens wrote him a "fabricated" charge for "threatening to commit/intentionally flooding any area." *Id.* at 10. The charge indicated that Riddick threatened to bring a lawsuit against the staff who ransacked his cell "for destroying [his] paperwork" and then "repeatedly flush[ed his] toilet [and] thr[ew] water on the floor from [his] sink." *Id.* at 10-11. Unit Manager Collins threw out the charge before it was heard. Riddick points out that defendants B. and J. H. Mullens are defendants in his prior lawsuits, and that after each shakedown in this case, Collins and other officers saw the condition of Riddick's cell and property. Riddick also states that on each incident day, only his cell was "ra[n]sacked, shaken down, showing [he] was singled out and discriminated against for purposes of harassment." *Id.* at 15.

In Riddick's § 1983 complaint, he names the following defendants: Lt. Penny McCowan, Assistant Warden Shannon Fuller, Unit Manager Larry Collins, Officers Barry Mullens, Jimmy Mullins, J. H. Mullens, Fox, B. Dotson, D. Gardner, and Bllued, Sergeants Flemming and G. Ridings, and Grievance Officer T. Trapp. Liberally construed, Riddick's complaint alleges the following claims: (1) B. Mullens violated Riddick's due process rights by writing a fabricated disciplinary charge and defaming his character, in retaliation for a prior grievance report Riddick filed on September 2, 2020; (2) on September 3, 2020, B. Mullens, J.

Mullins, J. H. Mullens, and Gardner ransacked Riddick's cell to retaliate against him for "talking to SIU about J. Mullins and B. Mullens on September 2, 2020, about [these officers] allowing an inmate to assault and batter" Riddick, *id.* at 16; (3) on September 17, 2020, B. Mullens signaled another inmate to flood Riddick's cell, thus failing to protect Riddick from harassment and potential physical harm from the water; (4) McCowan, Ridings, B. Mullens, J. Mullens, and J. H. Mullens saw Riddick's cell flooded while he was not there, placed him back in the cell, and allowed him to remain in the wet cell for hours; (5) McCowan falsely accused Riddick in an informal complaint response of flooding his own cell; (6) McCowan, J. Mullins, J. H. Mullens, and B. Mullens ransacked Riddick's cell on October 6, 2020, in retaliation for his refusal to leave the shower as ordered; (7) on November 3, 2020, Flemming, Ridings, Dotson, Fox, J. H. Mullens, and B. Mullens violated Riddick's Sixth, Eighth, and Fourteenth Amendment rights by allowing another inmate to flood his cell and damage his property; by leaving Riddick in the flooded cell, in deliberate indifference to his safety; by taking his two pairs of headphones, pens, batteries, and prayer oil; and by accusing Riddick of flooding his own cell with a towel in the toilet and stating that it is impossible to flood another inmate's cell through his vent; (8) Riddick also alleges that defendants Collins and Fuller, as unit manager and assistant warden, were informed of the other defendants' violations verbally and through written grievance documents, but did not intervene; (9) defendant Trapp wrongfully rejected Riddick's informal complaint about the September 3, 2020, incident as repetitive, preventing him from filing a timely regular grievance; and (10) Fuller ruled Riddick's grievances about the incidents on September 17, October 6, and November 3, 2020, to be unfounded, although video footage would have supported Riddick's allegations.

## II.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The court must dismiss a prisoner's § 1983 action about prison conditions "if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1). To state an actionable claim, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Riddick's claim (1), alleging that B. Mullens wrote a "false" charge against him, does not offend any constitutionally protected right. *Walker v. Clarke*, No. 7:19CV00743, 2020 WL 7378987, at *5–6 (W.D. Va. Dec. 15, 2020). Allegations of "false misbehavior reports and false testimony," without more, fail to implicate a constitutionally protected interest. *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011); *see Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (acknowledging "the general legal proposition that a false disciplinary charge cannot serve as the basis for a constitutional claim"). Moreover, in this case, the charge was thrown out even before the scheduled hearing, and Riddick was never penalized. Riddick's contention that the charge defamed his reputation also fails to implicate any constitutionally protected right. *Paul v. Davis*, 424 U.S. 693, 701 (1976) (holding that reputation is not a liberty or a property interest protected by the Due Process Clause); *Gini v. Las Vegas Metropolitan Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (holding that defamation alone can never serve as basis for First Amendment retaliation claim under § 1983).

Similarly, Riddick's bald accusation that the charge was retaliation for prior complaints he had made against B. Mullens is not sufficient to support a constitutional claim. To succeed on his First Amendment retaliation claim, Riddick "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)). Riddick fails to meet either the second or the third factor of the *Martin* analysis. He does not state any facts connecting the charge to his prior report against B. Mullens. More importantly, Riddick states no adverse effect from the charge since it was immediately dismissed. For these reasons, the court will summarily dismiss Riddick's claim (1) against B. Mullens.

Riddick similarly fails to offer factual support for the elements of his claim (2), alleging a retaliatory cell search and confiscation of or damage to his personal property. While Riddick's complaint to investigators may have been a protected First Amendment activity, the disturbance, or even confiscation of or damage to personal property, without more, does not constitute a sufficiently adverse action so as to satisfy the second element of the retaliation analysis, which requires an action by defendant that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Courts have held that similar types of actions against prisoners were not sufficiently adverse actions to support a retaliation claim. *E.g., Meeks v. Schofield*, 625 F. App'x 697, 701–02 (6th Cir. 2015) (discussing several searches of inmate's work station and a one-time ejection from the law library); *Pope v. Bernard*, No. 10-1443, 2011

WL 478055 (1st Cir. 2011) (reviewing search of cell and seizure of prisoner's Kufi); *Zaire v. Coryer*, 204 F. App'x 948, 948 (2d Cir. 2006) (considering confiscation of towel); *see also Mohammad v. Beaver*, No. 5:18-CV-00165-MR, 2021 WL 1147169, at *10 (W.D.N.C. Mar. 25, 2021) (citing to *Meeks*, *Pope*, and *Zaire* and holding that defendants' "scatter[ing] his belongings, confiscating religious headgear, ink pens and other property, and failing to return some of the property" was not sufficiently adverse action to support a First Amendment retaliation claim). Nor has the alleged retaliation chilled Riddick from pursuing this lawsuit, along with numerous other lawsuits that he continues to prosecute in this court. *See Constantine*, 411 F.3d at 500 (holding that the plaintiff's actual response to retaliatory conduct provides some evidence of whether the conduct in question tends to chill First Amendment activity). For these reasons, Riddick's retaliation contention in claim (2) fails to state a claim for which relief can be granted and must be dismissed.[3]

In claims (3) and (4), Riddick alleges that the defendant officers allowed his cell to be flooded—or placed him in a flooded cell—thus failing to protect him from harm. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). To state a claim of constitutional significance regarding prison conditions,

---

[3] To the extent that Riddick also attempts to assert a § 1983 claim for his allegedly damaged property, he cannot prevail. An allegation that a person under color of state law intentionally or negligently deprived an inmate of property while acting outside the scope of official policy or custom cannot state an actionable claim under § 1983 if a meaningful post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-39 (1981), *overruled in irrelevant part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Riddick possesses a post-deprivation remedy under Virginia law via the Virginia Tort Claims Act ("VTCA") for the value of damaged property items. Va. Code §§ 8.01-195.3, *et seq.* "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, Riddick cannot prevail under § 1983 based on an alleged property loss actionable under VTCA. *See Artis v. Mapp*, No. 91-6016, 931 F.2d 54, 1991 WL 61299, at *1 (4th Cir. Apr. 24, 1991) (*per curiam*) (affirming with the modification that an inmate's complaint about the state's deprivation of his property is frivolous because of availability of a post-deprivation remedy).

a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and that, (2) subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In a claim about past events, the objective element generally requires the plaintiff to show that he sustained a serious or significant mental or physical injury as a result of the challenged conditions. *Strickler v. Waters*, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). To satisfy the subjective element, the plaintiff must prove deliberate indifference—that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Then, the plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. *Id.* at 832.

The court cannot find that Riddick's allegations sufficiently connect his few hours in a wet cell to any deprivation of basic human needs or to his development of any serious mental or physical injury. More importantly, Riddick does not present facts showing that the defendants *knew* that their actions would result in the alleged mental-health issues. The court will summarily dismiss claims (3) and (4) for failure to state a claim upon which relief could be granted.

Claim (5) alleges that defendant McCowan defamed Riddick in an informal complaint response. As stated, defamation alone cannot support a First Amendment or a retaliation claim under § 1983. *Gini*, 40 F.3d at 1045. The court will therefore summarily dismiss this claim.

In claim (6), Riddick asserts a claim that officers retaliated against him for refusing to leave the shower when ordered to do so. This claim fails on the first and the second aspects of the retaliation analysis. *See Martin*, 858 F.3d at 249. Riddick has identified no constitutional right for an inmate to refuse to comply with an order under these circumstances, and as stated above, a mere cell search is not a sufficiently adverse action to support a retaliation claim. The court will summarily dismiss this claim for failure to state a claim.

Claim (7) fails for several reasons already discussed. Riddick does not allege facts showing that the defendants knew brief exposure to a wet cell would cause him serious physical or mental harm. Moreover, because Riddick has remedies under the VTCA to seek reimbursement for damage to his property, this aspect of claim (7) is not actionable under § 1983. And while Riddick may dispute the defendants' contention that he caused the flooding and falsely blamed another inmate for it, he has no actionable § 1983 claim based on his assertion that these accusations defamed his reputation. *Paul*, 424 at 701.

Because Riddick's underlying constitutional claims fail as explained above, his attempt in claim (8) to hold supervisory officials liable for their subordinates' actions must also fail. *See, e.g.*, *Evans v. Chalmers*, 703 F.3d 636, 654 n.11 (4th Cir. 2012) ("Because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must hold that all plaintiffs have failed to state supervisory liability . . . claims."). The court will therefore summarily dismiss the claims against supervisory officials.

Finally, Riddick's claims (9) and (10), alleging complaints about how officers handled his grievances, fail to rise to constitutional proportions. It is well established that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure.

An inmate therefore cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Thus, prison officials' alleged refusal to accept or rule as desired on an inmate's grievance documents does not present any claim that he has been deprived of constitutionally protected rights as required to proceed under § 1983.

For the reasons stated, the court concludes that Riddick's claims in this case must be summarily dismissed without prejudice, pursuant to § 1997e(c)(1), for failure to state a claim upon which relief could be granted.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to Plaintiff.

**ENTERED** this 6th day of August, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

- 11 -